UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTONIO MATHIS,

                    Petitioner,                Case No. 2:16-cv-13162
                                                    Hon. Sean F. Cox

v.

RANDALL HAAS,

                    Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING CERTIFICATE OF APPEALABILITY, AND (3) DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS**

This is a habeas case filed by a Michigan prisoner under 28 U.S.C. § 2254. Petitioner Antonio Mathis was convicted after a jury trial in the Macomb Circuit Court of assault with intent to commit murder, MICH. COMP. LAWS. § 750.83, conspiracy to commit first-degree murder, MICH. COMP. LAWS. § 750.316; MICH. COMP. LAWS. § 750.157a, possession of a firearm during the commission of a felony, MICH. COMP. LAWS. § 750.227b, unlawful imprisonment, MICH. COMP. LAWS. § 750.349b, and conspiracy to commit unlawful imprisonment, MICH. COMP. LAWS. § 750.349b; MICH. COMP. LAWS. § 750.157a.

Petitioner was sentenced as a fourth-time habitual felony offender to a controlling term of 50 to 75 years for the assault with intent to commit murder conviction, life imprisonment for the conspiracy to commit murder conviction, a two-year consecutive term for the firearm conviction, and lesser concurrent terms for his other convictions.

The petition raises a single claim: Petitioner was denied his due process right to a fair trial when the trial court denied Petitioner motion to separate his trial from his co-defendant, Jamal

Rogers. The Court finds that Petitioner's claim is without merit. Therefore, the petition will be denied. The Court will also deny a certificate of appealability and deny permission to proceed on appeal in forma pauperis.

## I. Background

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> [Co-defendant Jamal] Rogers and Latonya Bowman ("Bowman"), the victim, met in high school. In 2011, Bowman became pregnant with Rogers's child. Rogers expressed a desire for Bowman to terminate the pregnancy, but she did not do so. On May 25, 2012, when Bowman was nine months' pregnant, the two went to a drive-in movie together. After the movie, Bowman drove them back to Rogers's home. The two arrived at Rogers's home at approximately 1:30 a.m. the morning of May 26, 2012. When they arrived, Rogers told Bowman to pull her vehicle into the garage. Rogers manually opened the garage door, and after Bowman pulled in, closed it behind her vehicle. Bowman got out of the car, and felt an assailant, wearing gloves, grab the back of her neck and put a gun to her head. Bowman looked at Rogers, who said "Oh, shit," and did nothing else. The assailant restrained Bowman with duct tape and placed her in the rear seat of the vehicle. Duct tape was placed over Bowman's glasses, preventing her from seeing the assailant.
>
> The assailant drove Bowman to an unknown location. The assailant doused Bowman in lighter fluid and lit her on fire. Bowman managed to move the upper half of her body out of the car and tried to roll to put the flames out. While she did so, she heard two gunshots. She played dead, not knowing if she had been struck. She heard the footsteps of her assailant running away from the scene, and once she could no longer hear the footsteps, she managed to fully exit the vehicle and put out most of the flames. She was able to remove the tape binding her hands and, after removing the rest of her restraints and some clothing that would not stop burning, got back in the car. The keys were still in the ignition, so she started the car and drove away. After finding her bearings, she was able to drive to her mother's home, and her mother took her to the hospital.
>
> Police arrested Rogers later that morning. Mathis was later identified as the alleged assailant. Both defendants were charged. Before trial, defendants requested separate trials or juries, and the trial court denied their requests. Rogers also moved to suppress a statement he made to police, which the trial court also denied.

*People v. Mathis*, No. 317519, 2014 WL 6778962, at *1-2 (Mich. Ct. App. Dec. 2, 2014).

Following his conviction and sentence, Petitioner filed a claim of appeal in the Michigan Court of Appeals. His appellate brief raised a single claim:

> I. Is Defendant-Appellant entitled to a new trial where the trial court abused its discretion in denying the motion for a separate trial?

The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion. *Id*. Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, which raised the same claim as he raised in the Michigan Court of Appeals. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Mathis*, 863 N.W.2d 309 (Mich. 2015) (table).

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court adjudication is "contrary to" Supreme Court precedent under § 2254(d)(1) "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision [of the Supreme Court] and nevertheless arrives at a [different result]." *Lockyer v. Andrade*, 538 U.S.

63, 73 (2003) (internal quotation marks omitted).

Under the "unreasonable application" clause of § 2254(d)(1),

> even clear error will not suffice. Rather, as a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*White v. Woodall*, ___ U.S. ___, 134 S. Ct. 1697, 1702, 188 L. Ed. 2d 698 (2014) (citations, quotation marks, and alterations omitted).

"When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, ___ U.S. ___, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015). "Federal habeas review thus exists as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Id*. (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). "[W]hether the trial judge was right or wrong is not the pertinent question under AEDPA." *Renico v. Lett*, 559 U.S. 766, 778 n.3 (2010). The question is whether the state court's application of federal law was "objectively unreasonable." *White*, 134 S. Ct. at 1702. In short, the standard for obtaining federal habeas relief is "difficult to meet . . . because it was meant to be." *Burt v. Titlow*, ___ U.S. ___, 134 S. Ct. 10, 16, 187 L. Ed. 2d 348 (2013)(internal quotation marks omitted).

### III. Analysis

Petitioner asserts that the trial court's decision denying his motion to sever his trial from his co-defendant when they had antagonistic defenses rendered his trial fundamentally unfair in violation of due process. The claim is wholly without merit.

The Supreme Court has recognized no general right to a separate criminal trial. In *Zafiro v.*

4

*United States*, 506 U.S. 534 (1993), a case cited by Petitioner and the state appellate court, the U.S. Supreme Court considered "whether Rule 14 [of the Federal Rules of Criminal Procedure] requires severance as a matter of law when codefendants present 'mutually antagonistic defenses.'" *Zafiro*, 506 U.S. at 535. *Zafiro*, however, was based solely on Rule 14, and did not establish any rule of constitutional law. It is thus inapplicable to Petitioner's state court conviction. Cf. *Williams v. Singletary*, 114 F.3d 177, 181 (11th Cir. 1997) (noting that *Zafiro* involved an interpretation of the Federal Rules of Criminal Procedure and thus "it is not at all clear that *Zafiro* establishes a rule of constitutional law to be applied to state court judgments in § 2254 proceedings.").

Because the Supreme Court has not recognized a specific right to separate trials, "a state trial court's refusal to grant severance only mandates habeas corpus relief when (1) the joint trial 'resulted in the deprivation of a specific constitutional guarantee such as the right to call witnesses . . . or the right to confrontation,' or (2) when the joint trial abridged the defendant's fundamental right to a fair trial as secured by the Fourteenth Amendment.'" *Turpin v. Kassulke*, 26 F.3d 1392, 1404 (6th Cir. 1992) (Feikens, D.J., concurring in part and dissenting in part) (quoting *Jenkins v. Bordenkircher*, 611 F.2d 162, 168 (6th Cir. 1979)); accord *Hutchison v. Bell*, 303 F.3d 720, 731 (6th Cir. 2002). However, joint trials are favored, and the potential for prejudice alone is insufficient to mandate severance. See *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001).

Here, the Michigan Court of Appeals did not unreasonably apply this standard when it denied relief to Petitioner on this claim during his direct appeal:

> Mathis argues that Rogers's defense was to place the blame on Mathis, citing Rogers's statement to police sergeant John Barnes. Rogers admitted to Barnes that he was present during Bowman's abduction, and told Barnes that the abduction was Mathis's idea and that he told Mathis that he did not want to do anything in relation to the abduction. However, in making his argument, Mathis ignores that Rogers never presented this defense to the jury. Before trial began, Mathis and the prosecutor agreed to a redacted version of Rogers's statement, which removed all

5

references to Mathis. However, the prosecutor never sought to have this redacted statement introduced; instead, the prosecutor questioned Barnes about what Rogers told him during the interview. The trial court precluded Rogers from eliciting testimony from Barnes that would have allowed the jury to infer that Rogers implicated Mathis in the crime. Rogers chose not to testify, and as such, Rogers presented no evidence to the jury that directly implicated Mathis. Therefore, there is no indication that conflicting defenses were actually presented at trial, and accordingly, reversal is not warranted. See *id*. at 346-347. Further, even had this defense been presented by Rogers, it would not have required severance. Mere fingerpointing is not sufficient to demonstrate mutually irreconcilable defenses, particularly where, as here, the prosecutor's theory allows one defendant to be held criminally liable for the acts of the other. *Id*. at 360-361.

Mathis asserts that he was prejudiced because Rogers's attorney posed a question to Barnes that violated the trial court's order precluding Rogers from eliciting testimony from Barnes that would have allowed the jury to infer that Rogers implicated Mathis in the crime. The question by Rogers's attorney resulted in an objection by the prosecutor and a motion for a mistrial by Mathis. However, due to the timeliness of the prosecutor's objection, Barnes did not respond to the improper question. The trial court sustained the objection, instructed the jury that the question was not evidence, and instructed the jury to disregard the question. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v. Abraham*, 256 Mich. App. 265, 279 (2003). As the question was never answered, and given the trial court's instructions, Mathis was not prejudiced by Rogers's violation of the trial court's order. *Hana*, 447 Mich. at 351 (any risk of prejudice may "be allayed by proper instructions . . . .").

At various points in his brief, Mathis seems to argue that separate trials were required because, even as redacted, Rogers's statement to Barnes caused him substantial prejudice. Mathis and the prosecutor agreed to a redacted version of the statement, and Mathis withdrew his motion to the extent it challenged admission of the statement on confrontation grounds. By explicitly agreeing that the redacted statement could be presented by the prosecutor, Mathis waived any contention that he was prejudiced by the redaction. See *People v. Fetterley*, 229 Mich. App. 511, 520 (1998) (where a defendant acquiesces to the trial court's handling of a matter, he may not raise it as error in this Court). Further, the redacted statement was not introduced at trial, and none of Rogers's statements referencing Mathis were elicited through Barnes. The trial court also instructed the jury that "[e]ach defendants' statement has been admitted as evidence only against him. It cannot be used against the other, and you must not do so. You must not consider that statement in any way when you decide whether each respective defendant is guilty or not guilty." Once again, "Jurors are presumed to follow their instructions . . . ." *Abraham*, 256 Mich. App. at 279. At best, Mathis cites to nothing more than incidental spillover prejudice, which is not sufficient to warrant separate trials. *Hana*, 447 Mich. at 349. Mathis has not demonstrated that the trial court abused its discretion when it denied his motion

for separate trials.

*Mathis*, No. 317519, 2014 WL 6778962, at *3-4.

The Michigan Court of Appeals correctly denied relief. As the state court correctly found, none of Petitioner's specific constitutional rights were implicated by the joint trial. His non-testifying co-defendant's statement to police was not introduced at trial, and so his Sixth Amendment right to confront witnesses was not offender. Nor was Petitioner prevented from introducing any evidence in his own defense due to his co-defendant's presence implicating his constitutional right to present a defense. While it is true that the trial prosecutor was prepared to offer a redacted version of co-defendant's statement to police, the statement was never actually introduced.

It is true the prosecutor examined the police officer who questioned co-defendant about the interview. He testified that co-defendant told him that he dated the victim since high school and went out on a date on the evening of the incidence. Dkt. 11-9, at 8. Co-defendant told the officer that after the date the victim dropped him off at his house, and he had no idea what happened to her after that. Id., at 9. Co-defendant then changed his story to indicate that he had sex with the victim in the garage in the car before she left. Id., at 9. Co-defendant finally made a second statement a few days later in which he provided information about the victim's abduction, but no reference whatsoever was made about Petitioner or his involvement. Id., at 12-16.

Indeed, counsel for co-defendant complained that he was being deprived of the ability to fully represent his client when he was precluded from asking questions about how his client's statement implicated Petitioner. When co-defendant's counsel attempted to violate the ruling and ask the interviewing police officer about how the case against Petitioner was developed after the interview, Petitioner's objection was sustained. Id., at 36-37. The jury was instructed to "totally

disregard that question, and not use what you heard in any way in your deliberations ultimately in this case." Id., at 40. A trial court's instructions to the jury generally are presumed to have been followed. *Bales v. Bell*, 788 F.3d 568, 579 (6th Cir. 2015). Petitioner has not demonstrated any reason why the presumption that a jury follows its instructions should not be applied to this case.

In short, it constituted a reasonable application of clearly established federal law for the Michigan Court of Appeals to find that the failure to afford Petitioner a separate trial from his co-defendant did not render his proceeding fundamentally unfair. It fully and fairly outlined the facts and features of the case that indicated that Petitioner's rights were protected during the joint proceeding. The petition will therefore be denied.

IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings, which was amended as of December 1, 2009, requires that a district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11, Rules Governing Section 2254 Proceedings. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).

To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different

8

manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotes and citations omitted). Here, jurists of reason would not debate the Court's conclusion that Petitioner has not met the standard for a certificate of appealability because his claim is completely devoid of merit. Therefore, the Court denies a certificate of appealability.

The Court will also deny permission to appeal in forma pauperis because any appeal of this decision could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **DENIES** Petitioner's motion to stay, 3) **DENIES** a certificate of appealability, and 3) **DENIES** permission to appeal in forma pauperis.

**SO ORDERED.**

Dated: May 31, 2017
s/Sean F. Cox
Sean F. Cox
U. S. District Judge

I hereby certify that on May 31, 2017, the foregoing document was served on counsel of record via electronic means and upon Antonio Mathis via First Class mail at the address below:

Antonio Mathis 652121
MACOMB CORRECTIONAL FACILITY
34625 26 MILE ROAD
NEW HAVEN, MI 48048

s/J. McCoy
Case Manager